# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

## CENTRAL DIVISION

| | |
|---|---|
| CHIKARA ENTERPRISES, LLC, a Utah Limited Liability Company Acting as Trustee for The Patio Springs Real Estate Holding Trust, a Utah Trust for the benefit of COMPASSIONATE ORDER OF SERVICE, Beneficiary of Said Trust,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:09-CV-00693 DAK |
| UNITED STATES OF AMERICA,<br><br>Counterclaim Plaintiff/<br>Third Party Plaintiff<br><br>v.<br><br>CHIKARA ENTERPRISES, LLC, as trustee for THE PATIO SPRINGS REAL ESTATE HOLDING TRUST; CHARLES W. BUSCH; CREATIVE CAPITAL, LLC, and UNKNOWN TRUSTEE, as trustee for 55 HOME REAL ESTATE HOLDING TRUST,<br><br>Counterclaim/Third-Party Defendants. | |

This matter is before the court on Defendant/Counterclaim Plaintiff United States of America's Motion for Summary Judgment against Plaintiffs/Counterclaim Defendants Chikara Enterprises, LLC; Creative Capital, LLC; and Charles W. Busch pursuant to Rule 56 of the Federal Rules of Civil Procedure. The court held oral arguments on the motion on July 27, 2011. At the hearing, Plaintiffs/Counterclaim Defendants were represented by John J.E. Markham, II, and Defendant/Counterclaim Plaintiff was represented by Rick Watson. The court took the motion under advisement. The court has carefully considered all pleadings, memoranda, and other materials submitted by the parties. The court has further considered the law and facts relevant to the motion. Now being fully advised, the court enters the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff/Counterclaim Defendant Charles W. Busch is a Utah resident and a Minister in the Church of Compassionate Service ("COCS"). Busch obtained a property in Eden, Weber County, Utah, ("Eden property") on December 31, 2002 by Special Warranty Deed from the Federal Home Loan Mortgage Corporation. Plaintiff/Counterclaim Defendant Chikara Enterprises, LLC ("Chikara") is a Utah Limited Liability Company acting as trustee for The Patio Springs Real Estate Holding Trust ("Patio Springs"), a religious trust that purportedly owns the Eden property at issue in this case. Plaintiff Compassionate Order of Service ("the Order") is an association of persons who have taken a vow of poverty and dedicated themselves to religious service as Ministers of COCS. The Order is the sole beneficiary of the Patio Springs trust. Both the COCS and the Order are headquartered in Orem, Utah. Plaintiff/Counterclaim Defendant Creative Capital, LLC ("Creative Capital") is an entity that purportedly provided loans to Patio

2

Springs secured by the Eden property.[1]

Kevin Hartshorn is the Head Minister of the COCS and authored its guiding text. Hartshorn is also the managing member of Chikara, the trustor for Patio Springs as a representative of the COCS, and the trustee of CET Business Holding Trust, which is part of Creative Capital, LLC along with Chikara and Global Wealth Management, LLC. One of the Members of Global Wealth Management, LLC at the time of the purported transfer of the Eden property to Patio Springs was Slavi Kozhuharov (now Troy Sinclair), who was also a member of the High Council of the Order.

In 2001, Busch entered into a "vow of poverty" with the International Academy of Lymphology (IAL) in which Busch purported to give all of his real and personal property to IAL. Hartshorn assisted in recruiting Busch into the IAL. In March 2004, Busch transferred from IAL to the COCS, and he signed a new "vow of poverty" as well as a "vow of obedience." Under the new vow of poverty, Busch gave all of his real and personal property to the COCS, and Busch sent all of his pay from selling vacation timeshares for various companies directly to the Order, except when he worked for Shell Vacations Club in 2005. Since Shell Vacations Club refused to pay the Order directly, Busch would personally send the money he earned from that job to the Order after taxes were withheld. According to his vows of poverty and obedience, Busch worked for these companies as part of his ministerial duties for the COCS, even though none of the companies were in an agency relationship with the COCS.

Since the early 1990s, Busch has owned a one-sixth interest in a parcel of real property

---

[1] The court will refer to Busch, Chikara, and Creative Capital collectively as Counterclaim Defendants.

located in Baldwin County, Alabama. When Busch entered into his vow of poverty with the COCS in March 2004, he pledged his interest in the property to the COCS, although his co-owners refused to have the interest legally signed over to the COCS. The Alabama property was sold in November 2005, and Busch received $797, 631.46 for his interest in the property. Busch directed that his share of the proceeds of the sale be wired to a bank account associated with the COCS.

With respect to Busch's other property in Eden, Utah, Busch filled out a loan application in order to purchase such property in September 2002. The loan application included two Deeds of Trust, which totaled $148,400.00 and which were conveyed to GreenPoint Mortgage Funding, Inc. (GreenPoint). Although the Trust Deeds specified that a transfer of the Eden property without prior consent from GreenPoint would result in a demand for immediate repayment and would constitute a default, Busch transferred his interest in the Eden property without notifying GreenPoint on January 16, 2003, to 55 Home Real Estate Holding Trust for no consideration.

Despite Busch's transfer of his interest in the Eden property, Hartshorn directed an entity related to COCS to issue checks to GreenPoint on January 9, 2006, for the entire amount of $148,400.00 to discharge the obligations on the two Trust Deeds encumbering the property. The $148,400.00 used to discharge the debt came from the same account that received the money from the sale of Busch's Alabama property. Four days later, on January 13, 2006, a warranty deed was recorded transferring the Eden property from Busch to the Order for no additional consideration. This transfer left Busch with no substantial assets in his own name. At the exact same time, a warranty deed was recorded transferring the title to the Eden property from the Order to Patio Springs. Although the Eden property was estimated to be worth between

4

$300,000.00 to $350,000.00 at that time, the only consideration for the transfer of the property from the Order to Patio Springs was twenty silver dollars worth $1,278.00. The twenty silver dollars involved in the transaction were the property of COCS or a related entity and not the property of Patio Springs at the time of the transfer.

Exactly one minute after the two transfers above were recorded, a deed of trust was recorded describing a loan of $259,000.00 from Creative Capital to Patio Springs secured by the Eden property. In the following minute, a deed of trust was recorded describing a loan of $75,000.00 from Creative Capital to Patio Springs, which was also secured by the property. Despite the recording of these deeds of trust, Patio Springs received no funds from Creative Capital.

Although the Eden property has been transferred several times, Busch continues to use the property as a residence without paying rent whenever he has an assignment from the COCS in Salt Lake City, Utah. In addition, the utilities and services for the property remain in Busch's name, including utilities and services obtained for the property after the purported transfer of the property to Patio Springs. However, the utility bills are paid by the COCS, and Busch does not consider the Eden property to be his because he turned it over to the COCS under his vow of poverty. Whether the Eden property is also used by other Ministers of the COCS when they are on assignment in Utah is disputed.

In September 2001, Busch filed federal income tax returns for 1998, 1999, and 2000. According to the tax returns, Busch owed income taxes for each of those years, but Busch did not include payments with his returns and has not made payments since. Busch did not file income tax returns for 2002, 2003, or 2005. But, based on information provided by third parties, the

Internal Revenue Service ("IRS") assessed tax liabilities against Busch for those years. On January 11, 2006, October 27, 2006, and October 31, 2006, a delegate of the Secretary of Treasury recorded Notices of Federal Tax Liens against Busch in Weber County, Utah, for his unpaid federal tax liabilities. The liens attached to all property and rights to property in which Busch had an interest. On November 7, 2008, the IRS filed a Notice of Federal Tax Lien in the Registry of Deeds for Weber County, Utah, claiming a lien on the Eden property in the amount of $699,369.23 for taxes due and owing by Busch. Based on the income tax returns Busch filed, the tax liabilities assessed by the IRS, and statutory accruals, the total outstanding balance of all federal income tax liabilities assessed against Busch was $730,440.64 as of January 31, 2011.

In response to the tax lien on the Eden property, Chikara and the Order filed a Complaint seeking a declaratory judgment that the lien was wrongfully filed and should be removed because allegedly Busch no longer has any interest in the Eden property. The United States filed an Answer, Counterclaim, and Third Party Complaint against an unknown Trustee for 55 Home Real Estate Holding Trust. Chikara and Busch filed an Answer to the United States' Counterclaim. The United States later amended its Third Party Complaint and added Creative Capital, LLC as a defendant because it may claim an interest in the Eden property.

After filing its Amended Counterclaim/Third Party Complaint, the United States filed a Motion for Default Judgment against 55 Home Real Estate Holding Trust[2] and a Motion for Summary Judgment against Chikara, Creative Capital, and Busch.

---

[2]The United States' Motion for Default Judgment against 55 Home Real Estate Holding Trust was granted in a separate decision. Therefore, this Order will only address the United States' Motion for Summary Judgment.

**DISCUSSION**

The United States moves for summary judgment against Chikara, Creative Capital, and Busch on the grounds that there are no genuine issues of material fact as to Busch's outstanding federal tax obligations and as to whether the United States is entitled to foreclose its federal tax lien against the Eden property. The court will address each of these issues.

**I.      Tax Assessments Should Be Reduced to Judgment**

Although both the United States and Counterclaim Defendants argued extensively in their memoranda before the court regarding whether the taxes assessed against Busch were valid, Counterclaim Defendants, in a Post-Argument Correction and Clarification, stated that they "no longer dispute that the taxes stated in the lien filed by the IRS were assessed against Busch and that the assessments were never challenged and thus are currently, along with interest and penalties, the taxes due and owing." Based on this concession and the law relied upon by the United States, the court grants the United States' motion to reduce the taxes assessed against Busch to judgment. The court, therefore, will consider the taxes assessed against Busch valid for the remainder of this Order.

**II.     The United States is Entitled to Foreclose Federal Tax Liens Against the Real Property**

Next, the court concludes that, based on the undisputed evidence before the court, the United States is entitled to foreclose its federal tax liens against Busch on the Eden property because Busch has retained the beneficial ownership of the property, the transfers of the property were fraudulent, and Creative Capital has no interest in the Eden property.

### A. Patio Springs is a Nominee of Busch

The United States is entitled to foreclose the federal tax liens against the Eden property because the federal tax liens against Busch attach to all property and rights to property in which Busch has an interest and because Busch retains a beneficial interest in the Eden property.

First, a tax lien is perfected upon assessment without further action by the United States. *United States v. Vermont*, 377 U.S. 351, 352 (1964). A United States tax lien attaches to all property and rights to property of the taxpayer, 26 U.S.C. §§ 6321, 6322, including property acquired by the taxpayer when the lien is in force, *Glass City Bank v. United States*, 326 U.S. 265, 267-68 (1945), and the lien continues to be in force until the liability is paid in full or becomes unenforceable due to the lapse of time, 26 U.S.C. § 6322. Once a lien has arisen, the United States may file an action to enforce the lien against any property in which the taxpayer has an interest. 26 U.S.C. § 7403. Because the United States validly assessed tax liabilities against Busch and because Busch has not yet paid those liabilities, the United States may foreclose the tax liens against any property in which Busch has an interest.

Busch has an interest in the Eden property because Patio Springs qualifies as a nominee of Busch, or as the named holder of the property or rights to the property to which Busch retains the beneficial ownership. A federal tax lien attaches to property held by a taxpayer's nominee. *See United States v. Miller Bros. Constr. Co.*, 505 F.2d 1031, 1036 (10th Cir. 1974); *see also Spotts v. United States*, 429 F.3d 248, 251 (6th Cir. 2005) (clarifying that tax liens attach to "property held by a third party if it is determined that the third party is holding the property as a nominee or alter ego of the delinquent taxpayer"). The following six factors are used to determine whether a party qualifies as a nominee: "'(1) whether inadequate or no consideration

was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the tranferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retained possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property.'" *Holman v. United States*, 505 F.3d 1060, 1065 n.1 (10th Cir. 2007) (*quoting Spotts*, 429 F.3d at 251).

Applying the six factors to this case leads to the conclusion that Patio Springs is holding the Eden property as a nominee of Busch. First, Busch transferred the Eden property to the Order for either no or inadequate consideration, even though he had previously transferred it to 55 Home Real Estate Holding Trust. Busch transferred the Eden property to the Order a few days after the Order discharged the obligations on the two Trust Deeds encumbering the property for $148,400.00. Counterclaim Defendants argue that this discharging of the obligations qualifies as consideration for the subsequent transfer of the property. But the United States argues that, because the $148,400.00 came from the same account into which the money from the sale of Busch's Alabama property was transferred, Busch essentially paid off his own obligations and the money does not qualify as consideration. The court declines to address whether the discharge of the obligations on the property qualified as consideration because, even if the $148,400.00 was considered to be money paid from the Order, the consideration was still inadequate. The property at the time of the transfer was predicted to be worth between $300,000.00 and $350,000.00. Because the "consideration" was less than half the value of the property, it was inadequate for the transfer of the property from Busch to the Order. The $1,278.00 in silver dollars used in the subsequent transfer of the Eden property from the Order to Patio Springs,


therefore, was also inadequate consideration.

Second, at the time the Eden property was transferred to the Order and then to Patio Springs, Busch was aware that he had significant, outstanding tax liabilities to the IRS. And, after transferring the property, Busch remained in control of it. By 2006, Busch had filed tax returns for the years 1998, 1999, and 2000, and was thus aware of the over $40,000.00 in taxes that he owed for those years. In addition, Busch earned money in 2002, 2003, and 2005, which, although the assessments took place after the transfer, he was likely aware would result in additional income tax liabilities. Finally, Busch received $797,631.46 for the sale of his property in Alabama prior to transferring the Eden property. Although he may not have been aware of the exact amount that he owed in taxes for the income derived from the sale of that property, he was aware that he owed significant taxes on that income. Therefore, Busch transferred the Eden property in anticipation of significant tax liabilities.

Despite the transfer of the property, Busch still retained control over the property. Even after transferring the Eden property to the Order, Busch continued to reside at the property whenever he was in Utah. All of the utilities for the property remained in Busch's name and, significantly, after the transfer, new utilities obtained for the property were placed in Busch's name. There is no evidence that any other party had control over the property. Therefore, undisputed evidence demonstrates that Busch retained control over the property.

The third factor requires the court to examine whether there is a close relationship between the nominee and the transferor. The evidence demonstrates that there is a close relationship between the Order, Patio Springs, and Busch. Hartshorn, who assisted in recruiting Busch to the IAL, is the Head Minister of COCS and the Order. Hartshorn is also the managing

member of Chikara and the trustor for Patio Springs as a representative of the COCS. In fact, all of the entities involved in the several transfers are closely related to and largely managed by the COCS under the direction of Hartshorn. Therefore, a close relationship exists between the entities involved in the Eden property's transfer.

Fourth, Counterclaim Defendants recorded the conveyances of the Eden property. But, in this case, the recording of the conveyances is not a strong indicator that Patio Springs is the true holder of the beneficial ownership instead of a nominee for Busch. In general, parties are less likely to record a conveyance to a nominee because the initial owner desires to maintain control over the property. However, if property is being conveyed in anticipation of tax liabilities, recording the conveyance may actually assist the taxpayer in avoiding liabilities. Therefore, although Counterclaim Defendants recorded their conveyances of the Eden property, the recording of the conveyance in this situation is not persuasive evidence that the transfer was to the true beneficial owner rather than to a nominee.

Under the fifth factor, as already mentioned, Busch retained possession of the property because he continued to reside there whenever he was in Utah. And, finally, Busch continues to enjoy the benefits of the transferred property because he lives there without paying rent and because he continues to arrange for maintenance contracts for the property in his own name.

Therefore, based on the undisputed evidence presented to the court, the court concludes that Patio Springs qualifies as a nominee of Busch, holding the Eden property for Busch's beneficial interest. Accordingly, the United States may attach a federal tax lien against Busch to the Eden property.

### B. The Transfers of the Real Property Were Fraudulent Conveyances

In addition to Patio Springs qualifying as a nominee of Busch, the United States is also entitled to foreclose its federal tax liens against the Eden property because undisputed evidence demonstrates that the transfers of the property qualify as fraudulent conveyances under the Utah Code. In order for transfers to constitute constructive fraud in Utah, they must meet the terms of the following statute:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation.

Utah Code Ann. § 25-6-6(1). "That statute deems a transfer fraudulent without requiring proof of actual intent to defraud when the transfer is not made for a reasonably equivalent value; the transferor is either insolvent at the time or rendered insolvent by the transfer; and the creditor's claim arose before the transfer." *Morganroth & Morganroth v. DeLorean*, 213 F.3d 1301, 1305 (10th Cir. 2000). When a transfer is fraudulent, the Utah Code allows the transfer to be set aside. *See* Utah Code Ann. § 25-6-8.

In this case, all of the elements of constructive fraud are met. As already discussed, the various transfers of the Eden property were not made for reasonably equivalent value even if the $148,400.00 discharge of the obligations on the property qualifies as consideration. In addition, when Busch transferred the Eden property to the Order, Busch was rendered insolvent because, having already transferred his earnings from the sale of the Alabama property to the Order, Busch no longer had any substantial assets in his own name. Finally, the United States' lien on the Eden property arose before Busch transferred the property to the Order because the lien was

12

perfected at the time of the assessment. *See Morganroth & Morganroth*, 213 F.3d at 1305 (granting summary judgment under this provision where transfer was not made for reasonably equivalent value and rendered the debtor insolvent).

Therefore, the court concludes that the transfers of the Eden property were fraudulent and the court sets aside these transfers. Because the transfers are set aside, Busch is the true owner of the Eden property, and the United States is entitled to foreclose its federal tax lien against Busch on that property.

### C. Creative Capital Has No Interest in the Real Property

Finally, this court holds that Creative Capital has no interest in the real property. In general, 26 U.S.C. § 6323(a) grants *bona fide* purchasers of property priority over unfiled federal tax liens. In order for a purchaser to take priority over an unfiled federal tax lien, however, "valuable consideration" must be exchanged for the property. *United States v. Scovil*, 348 U.S. 218, 221 (1955). Because it is undisputed that no real value was exchanged for the debts secured on the Eden property in favor of Creative Capital, the debts do not have priority over the federal tax liens. Accordingly, the court finds that Creative Capital has no interest in the Eden property.

### CONCLUSION

Based on the above reasoning, Defendant/Counterclaim Plaintiff United States' Motion for Summary Judgment is GRANTED.

Dated this 8th day of August, 2011.

_____
Dale A. Kimball,
United States District Judge